UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 3:17-cr-225-TJC-MCR

MITCHELL LOOR  ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

## O R D E R

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Mitchell Loor is a 38-year-old inmate incarcerated at Fort Dix FCI, serving a 120-month term of imprisonment for conspiracy to distribute 500 grams or more of methamphetamine. (Doc. 264, Judgment). According to the Bureau of Prisons (BOP), he is scheduled to be released from prison on March 2, 2028. Defendant seeks compassionate release because of the COVID-19 pandemic, his underlying health conditions, and because of alleged

mismanagement of the pandemic by officials at Fort Dix FCI. (Doc. 277, Motion for Compassionate Release). The United States filed a response in opposition. (Doc. 279, Response). Although not granted leave to do so, Defendant filed a reply brief (Doc. 280) and an addendum (Doc. 281). See M.D. Fla. Local Rule 3.01(d). Having considered each of Defendant's arguments and attachments, the Motion is due to be denied.

A movant under § 3582(c)(1)(A) bears the burden of proving that a sentence reduction is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021) (citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment … if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit Court of Appeals instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it would be inconsistent with the [Sentencing] Commission's policy statement defining 'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1247, 1249 (11th Cir.), cert. denied, 142 S. Ct. 583 (2021); see also

U.S.S.G. § 1B1.13, cmt. 1 (defining "extraordinary and compelling reasons"). Notably, "[b]ecause the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). As the Third Circuit Court of Appeals has observed, COVID-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant has not demonstrated extraordinary and compelling reasons warranting compassionate release. See U.S.S.G. § 1B1.13 & cmt. 1. Defendant states that he has several medical conditions that put him at greater risk of severe illness should he contract COVID-19, including atrial fibrillation, a history of two heart attacks, sleep apnea, obesity, hypertension, and "periodic recurrent" multiple sclerosis (MS). (Doc. 277 at 14; see also Doc. 279-5 at 86–87). According to the Centers for Disease Control (CDC), several of these conditions can indeed increase the risk of severe illness from COVID-19.[1] Importantly, however, Defendant (wisely) received two doses of the Pfizer COVID-19 vaccine on August 25, 2021, and September 16, 2021. (Doc. 279-4,

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

3

Vaccine Record). The government adds that "[b]ased on [Defendant's] records he just became eligible to receive a booster on March 30, 2022," and "[o]nce [the facility] ha[s] the requisite number of eligible inmates, to include inmates that have requested to receive the vaccine/booster, the facility [will] place[] a vaccine order." (Doc. 279 at 2). Thus, Defendant should soon be able to obtain a COVID-19 booster shot, if he has not received one already. According to the available data, the COVID-19 vaccines are effective at preventing death or serious illness from COVID-19, including against emerging variants.[2] As the Seventh Circuit Court of Appeals observed:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021). Thus, "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release." United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021); see also United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."). The emergence of the omicron variant of COVID-19, which can somewhat evade vaccine immunity, does not change this conclusion. According to recent data, vaccination still offers protection against severe illness, hospitalization, and death from several variants of coronavirus, including the omicron variant, even if vaccination does not prevent infection altogether.[3] Because Defendant has received two doses of the Pfizer COVID-19 vaccine and is due to receive a booster soon, the pandemic and his underlying conditions are not "extraordinary and compelling reasons."

To the extent Defendant relies on his medical conditions as a stand-alone basis for compassionate release, he has not provided evidence that his conditions (i) are terminal or (ii) substantially diminish his ability to provide self-care within the prison environment and are conditions from which he is not expected to recover. See U.S.S.G. § 1B1.13, cmt. 1(A). Notably, Defendant states that due to his "periodic recurrent" MS, he suffers "bouts" of muscle failure that prevent him from standing, walking, or speaking. (Doc. 277 at 14). However, Defendant offers no evidence about the frequency of these "bouts" of muscle failure, which according to Defendant's description appear to be

---

[3] COVID-19 vaccines induce immune response to Omicron, National Institutes of Health (NIH), Feb. 15, 2022, available at https://www.nih.gov/news-events/nih-research-matters/covid-19-vaccines-induce-immune-response-omicron.

temporary. Besides, according to the Presentence Investigation Report (PSR), Defendant was diagnosed with MS in 2003 (Doc. 260, Amended PSR ¶ 61), but it did not stop him in 2011 from joining two other individuals in battering an individual with fists and a metal chair (id. ¶ 39), from carrying a concealed firearm in 2013 (id. ¶ 40), or from committing the current offense. Defendant is relatively young, and the medical records reflect that Defendant's conditions are well-monitored and treated. (See generally Doc. 279-5).[4] On the record before the Court, Defendant's conditions are not by themselves an "extraordinary and compelling" circumstance.

To the extent Defendant seeks compassionate release because administrators at Fort Dix FCI mismanaged the COVID-19 pandemic, that is not a circumstance that falls within the definition of "extraordinary and compelling reasons" under the policy statement. See U.S.S.G. § 1B1.13, cmt. 1. Although Defendant argues that the policy statement is not binding (Doc. 277 at 15–16), the Eleventh Circuit has rejected that argument, Bryant, 996 F.3d at 1247–48. Moreover, Defendant's argument that Fort Dix FCI mismanaged the pandemic depends, for the most part, on events that happened before

---

[4]  Defendant argues in his Reply (Doc. 280) that he is not receiving adequate medical attention. The medical records do not reflect that prison health personnel are ignoring his medical needs. Further, "a defendant's mere dissatisfaction with his course of medical treatment does not create such extraordinary and compelling reasons as to justify a sentence reduction." United States v. Heck, No. 3:17-cr-224-MMH-MCR, 2021 WL 1172938, at *5 (M.D. Fla. Mar. 29, 2021) (internal quotation marks, alterations, and citation omitted).

6

Defendant arrived at the facility. Most of the failures Defendant cites occurred between 2020 and mid-2021 (Doc. 277 at 2–8), but Defendant did not arrive at Fort Dix FCI until after he was sentenced on May 27, 2021 (see Doc. 263). Today, the BOP reports that Fort Dix FCI has zero cases of COVID-19.[5] The BOP also reports that 300 staff members and 2,811 inmates (or 87% of the facility's 3,235 total inmate population) have been vaccinated against COVID-19.[6] Although Defendant suggests that the BOP has underreported the number of inmates who contracted or died from COVID-19, he provides no evidence that this is currently an issue or that the BOP is overreporting the number of inmates who have been vaccinated. The current COVID-19 case numbers and vaccination data indicate that COVID-19 is not the same threat at Fort Dix FCI that it was during the early stages of the pandemic.

In any event, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. Defendant was convicted of a conspiracy to distribute a significant amount of methamphetamine, which spanned several months in 2017. (See Doc. 260 ¶¶ 1–17). He was responsible for 4.54 kilograms of methamphetamine and 9.03 kilograms of methamphetamine (actual). (Id. ¶ 26). Despite facing a sentencing guidelines range of 235 to 293 months in prison (id. ¶ 74), the Court varied well below the guidelines range when it

---

[5] https://www.bop.gov/coronavirus/. Last accessed April 20, 2022.

[6] See id.

sentenced Defendant to a term of 120 months in prison. Dating from his arrest on August 26, 2019, id. at ECF p. 1, Defendant has served approximately 32 months of his prison term, which is a fraction of the sentence imposed and an even smaller fraction of his guidelines range. In view of all the § 3553(a) factors, including the need to reflect the seriousness of the offense, provide just punishment, and to afford adequate deterrence, reducing Defendant's sentence is not warranted at this time. See United States v. Pawlowski, 967 F.3d 327, 330–31 (3d Cir. 2020) (affirming denial of compassionate release based on the § 3553(a) factors where defendant, although suffering from heart disease, COPD, sleep apnea, and previously had a lung removed, had served less than two years of a 15-year sentence for bribery, attempted extortion, wire fraud, and mail fraud).

Accordingly, Defendant's Motion for Compassionate Release (Doc. 277) is **DENIED**.[7]

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of April, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

---

[7]   To the extent Defendant requests that the Court order a direct transfer to home confinement, the Court cannot grant that request because the Attorney General has exclusive jurisdiction to decide which prisoners to place in the home confinement program. See United States v. Groover, 844 F. App'x 185, 188 (11th Cir. 2021); Touizer v. U.S. Att'y Gen., No. 21-10761, 2021 WL 3829618, at *2–3 (11th Cir. Aug. 27, 2021).

lc 19
Copies:
Counsel of record
Defendant